**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION**

**CANAL INSURANCE COMPANY**                                                          **PLAINTIFF**

        v.                 Civil No. 05-6019

**LARRY NIX LOGGING, INC.; LARRY
NIX, Individually and d/b/a LARRY
NIX LOGGING CONTRACTORS; CHAD
DILLARD; and ELIZABETH OTWELL**                                                      **DEFENDANTS**

### MEMORANDUM OPINION

Now on this 12th day of April, 2006, come on for consideration **Plaintiff's Motion For Summary Judgment** (document #17), and **Defendant, Elizabeth Otwell's, Motion For Summary Judgment With Respect Solely To The Issue Of Coverage Of A Temporary Substitute Automobile** (document #22), from said motions, and the responses thereto, the Court finds and orders as follows:

    1.   Plaintiff, Canal Insurance Company ("Canal"), seeks a declaratory judgment to the effect that it is not liable to indemnify its insured, Larry Nix d/b/a Larry Nix Logging Contractors ("Nix"), for damages arising out of an automobile accident.

    Defendants include plaintiff's insured (Nix); the insured's employee/driver, Chad Dillard ("Dillard") who was involved in the accident; and the driver of another car who was injured in the accident, Elizabeth Otwell ("Otwell").

    Canal and Otwell, the injured driver, both move for summary judgment. The issues are fully briefed, and the matter is ripe

for decision.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States, 31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995).** The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).**

3. Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

\* Defendant Dillard was employed as a truck driver/log hauler by defendant, Nix.

\* Donald Wayne McMichael ("McMichael") was also a truck driver/log hauler employed by Nix.

* In the course of his employment, Dillard normally drove a Kenworth logging truck owned by Nix; and McMichael normally drove a Western Star logging truck owned by Nix.

* On July 5, 2004, Nix told McMichael and Dillard to take the Western Star to a shop in Gurdon to have the clutch adjusted. McMichael drove the Western Star to the Gurdon repair shop, while Dillard followed in his personal vehicle -- a Chevrolet pickup (apparently so that McMichael would have a way to get to work after he had dropped off the Western Star).

* Dillard drove his personal vehicle that day because it was more convenient than driving the Kenworth.

* The Kenworth was not withdrawn from normal use for servicing or repair, or because of its breakdown, loss, or destruction, but was parked at Dillard's home when Dillard followed McMichael to the repair shop. Dillard planned to return to his home and pick up the Kenworth and drive it to a Nix facility later that day.

* When Dillard was returning home in his personal vehicle to get the Kenworth, he was involved in an accident with Otwell.

* At the time of the accident, Nix had in effect Basic Automobile Liability Policy No. 445173 (the "Policy") with Canal.

* The Policy provided coverage for bodily injury and property damage for which Nix became liable, arising out of ownership, maintenance, or use of either an owned automobile or a

temporary substitute automobile.

    \*    The owned automobiles covered by the Policy were:

        #   the Western Star;

        #   the Kenworth;

        #   a Peterbilt; and

        #   any trailer singularly attached to one of those tractors.

Dillard's personal vehicle was not an owned automobile under the Policy.

    \*    The Policy defines "temporary substitute automobile" as "an automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction."

    \*    Dillard was not a member of the Nix household.

    \*    Otwell brought suit against Nix and Dillard, and Nix made a claim for coverage relating to that suit against the Policy.

    4.    Canal argues that there is no coverage under the foregoing facts because Dillard's truck was neither an "owned automobile" nor a "temporary substitute automobile" as defined in the Policy.

    Defendants Canal and Otwell take the position that the term

"temporary substitute automobile" is ambiguous, and must be interpreted in the way most favorable to them. Alternatively, they contend that coverage exists by virtue of an Endorsement to the Policy, or because of a Certificate of Liability Insurance showing Potlatch as an additional insured on the Policy.

5. The legal principles applicable to the construction of insurance policies in Arkansas have been succinctly summarized as follows:

> In reviewing an insurance policy, when the terms of the policy are clear, the language in the policy controls. If a policy provision is ambiguous, and only one reasonable interpretation is possible, the court will give effect to the plain language of the policy without resorting to rules of construction; it is the duty of the courts to give effect to the plain wording of the policy. A policy will not be interpreted to bind the insurer to a risk that it plainly excluded and for which it was not paid. If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, the policy will be construed liberally in favor of the insured and strictly against the insurer. The language of an insurance policy is to be construed in its plain, ordinary, and popular sense. The fact that a term is not defined in a policy does not automatically render it ambiguous. As a guideline of contract interpretation, the different clauses of a contract must be read together and the contract construed so that all parts harmonize.

**Curley v. Old Reliable Casualty Co., 85 Ark. App. 395, 155 S.W.3d 711 (2004)**(internal citations omitted). Defendants' arguments in favor of coverage must be evaluated in light of these principles.

6. The contention that Dillard's personal vehicle constituted a "temporary substitute automobile" under the Policy goes as follows:

* the Western Star (McMichael's truck) was "withdrawn from normal use for servicing" when it was dropped off at the repair shop in Gurdon;

* under ordinary circumstances, McMichael would have driven the Western Star to work;

* Dillard followed McMichael to the repair shop so McMichael would have a way to get from the repair shop to work;

* thus, the vehicle Dillard drove to pick up McMichael was substituting for the Western Star.

This argument is of no avail. The Policy defines "temporary substitute automobile' in plain, ordinary language. The signal characteristics of the definition are:

* that it is an automobile "not owned" (by Nix);

* that it is "temporarily used with the permission of the owner" (here, the owner being Dillard); and

* that it is being so used "as a substitute for an owned automobile" when that "owned automobile" is withdrawn from normal use for various specified reasons.

As to the first two of these characteristics, there is no dispute. The vehicle in question was not owned by Nix and was obviously being used with the permission of its owner, Dillard, who was driving it. The problems arise with the remaining characteristics.

Dillard's assigned work vehicle was the Kenworth, and the evidence submitted in connection with the motion is to the effect that Dillard drove it not only regularly in the course of his work, and to and from work, but also to run errands during the workday. Nix testified that it was an "infrequent" occurrence for Dillard to use his personal vehicle on company business and that there was no particular reason why Dillard drove his own truck on July 5, 2004, except that it was less expensive to drive than the Kenworth.

The evidence indicates that when Dillard followed McMichael to the repair shop, he was running an errand for Nix and that, in the normal course of events, he would have driven the Kenworth on such an errand. In light of that evidence, if Dillard's personal vehicle can properly be characterized as a "temporary substitute automobile" under the terms of the Policy, it was substituting for the Kenworth -- not the Western Star. The Kenworth had not been withdrawn from normal use, but was sitting in Dillard's driveway, ready to use. To conclude that Dillard's pickup (used instead of Dillard's assigned Kenworth to pick up McMichael after the latter had dropped off his assigned Western Star for repair) was a "temporary substitute automobile" for the Western Star would be an unreasonable interpretation, and the Court declines to so conclude.

In sum, the Court does not believe that the pertinent

portions of the Policy are ambiguous.  It further concludes that defendants have failed to show the existence of any genuine dispute that Dillard's personal vehicle does not qualify as a "temporary substitute automobile" as defined in the Policy.

7. The Endorsement argument relates to the following Endorsement to the Policy as a source of coverage:

> PERSONS INSURED SECTION A-III IS AMENDED TO INCLUDE AS AN ADDITIONAL INSURED THE PERSONS OR ORGANIZATIONS AS IDENTIFIED BELOW, BUT ONLY WITH RESPECT TO LIABILITY ARISING OUT OF THE NAMED INSUREDS OPERATIONS PERFORMED FOR THAT ADDITIONAL INSURED.  COVERAGE IS EXTENDED TO INCLUDE PROTECTION TO THE ADDITIONAL INSURED ONLY FOR SUCH OPERATIONS AS ARE PERFORMED BY VEHICLES SCHEDULED AND VEHICLES OWNED, LEASED, HIRED OR NON-OWNED THAT ARE OPERATED BY THE NAMED INSURED IN OPERATIONS FOR THE ADDITIONAL INSURED.

The entity "identified below" in the Endorsement is Potlatch Corporation.

The "Endorsement" argument goes as follows:

* had it not been rainy on July 5, 2004, Nix would have been cutting timber for Potlatch under a contract which required him to have liability insurance for non-owned vehicles;

* the Endorsement makes Potlatch an additional insured as to "operations" performed for it;

* as part of his "operations" for Potlatch, Nix was expected to perform normal maintenance and repair on his vehicles;

* thus, Nix was working for Potlatch by having Dillard and

McMichael take the Western Star in for service, and Dillard's personal vehicle, a "non-owned" vehicle, should be covered.

The "logic" of this argument breaks down under even the most liberal analysis. The Endorsement makes Potlatch an additional insured -- but only with respect to liability arising out of Nix's operations performed for Potlatch. For coverage to exist because of the Endorsement, there would have to be evidence that Nix, an independent contractor for cutting wood, was working for Potlatch by performing routine maintenance on his trucks on a rainy day when, in fact, he could not cut wood for Potlach or anyone else.

To support their argument that they have such evidence, defendants rely on the Affidavit of Jim Cornelius, wherein Cornelius avers that "[a]s a part of his normal operations as an independent contractor for Potlatch Corporation, Larry Nix d/b/a Nix Logging Contractors, was expected to perform normal maintenance and repair on his vehicles and equipment." The Court is not convinced that the reach of the Cornelius Affidavit is sufficient to span the evidentiary gap defendants face. A copy of the contract between Nix and Potlatch was made an exhibit to the Affidavit. Its insurance requirements specifically contemplate that Nix might use borrowed or rented trucks to deliver wood (which trucks might well be serviced by their owners, not by Nix), and it includes no provision that any part of the contract work

consists of vehicle maintenance or repair.  Given the terms of the contract, the Cornelius Affidavit appears to show only the obvious -- that Potlatch expected its contractors to have equipment in good running order, so the contract objective of delivering wood would not be delayed.  The Court is not persuaded that it does anything more -- and certainly does not believe it is sufficient evidence to establish the coverage in question.

In addition, the Endorsement only covers "operations that are performed by vehicles."  This language is unambiguous but, even if it were not, an interpretation that it included arranging for vehicle repair work -- at a time when no logging work was being done for the company requiring the endorsement -- would not be reasonable.

For these reasons, the Court finds that defendants have failed to show the existence of a genuine issue of material fact as to whether the Endorsement extends coverage under the Policy to Dillard's personal vehicle.

8.  The Certificate of Liability Insurance argument hinges on the preceding arguments.  It looks to language contained in a Certificate of Liability Insurance certifying that Nix had certain insurance policies in place and that Potlatch was an additional insured on those policies (one of which is the Policy in question here).

The Certificate bears, on its face, the following two

caveats:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.
>
> THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.  AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

On the back, the Certificate bears yet another such caveat:

> The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.

Because defendants have been unable to produce evidence showing a genuine issue of coverage under their other arguments, the "Certificate of Insurance" argument must also fail.

9. Because defendants have failed to demonstrate the existence of any genuine issue of material fact upon which coverage under the Policy for the Dillard/Otwell collision could be predicated, the Court finds that summary judgment should be granted in favor of Canal.

**IT IS THEREFORE ORDERED** that **Plaintiff's Motion For Summary Judgment** (document #17) is **granted,** and judgment will be entered separately finding that Canal Insurance Coverage has no liability,

under Basic Automobile Liability Policy 445173, for the automobile collision between Larry Dillard and Elizabeth Otwell that occurred on July 5, 2004.

**IT IS FURTHER ORDERED** that **Defendant, Elizabeth Otwell's, Motion For Summary Judgment With Respect Solely To The Issue Of Coverage Of A Temporary Substitute Automobile** (document #22) is **denied.**

**IT IS SO ORDERED.**

                                                        **/s/ Jimm Larry Hendren**
                                                        **JIMM LARRY HENDREN**
                                                        **UNITED STATES DISTRICT JUDGE**